392 F.2d 354
 2 A.L.R.Fed. 366
 The HERALD COMPANY, Plaintiff-Appellant,
v.
Merle D. VINCENT, Jr., Regional Director, Region 3, of the
National Labor Relations Board and John H. Fanning, Gerald
A. Brown, Howard Jenkins, Jr. and Sam Zagoria, constituting
the National Labor Relations Board, Defendants-Appellees.
 No. 336, Docket 31999.
 United States Court of Appeals Second Circuit.
 Argued Feb. 5, 1968.
Decided March 22, 1968.
 
 Tracy H. Ferguson, Syracuse, N.Y. (Bond, Schoeneck & King, Charles T. Beeching, Jr., Syracuse, N.Y., on the brief), for plaintiff-appellant.
 Robert M. Lieber, Washington, D.C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty., N.L.R.B., on the brief), for defendants-appellees.
 Before WATERMAN and FEINBERG, Circuit Judges, and BARTELS, District Judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 This case is an attempt by an employer to obtain district court review of the conduct of a representation proceeding by the National Labor Relations Board. Plaintiff The Herald Company appeals from the dismissal of its complaint and denial of its motion for a preliminary injunction by the United States District Court for the Northern District of New York, Stephen W. Brennan, J. Plaintiff's action is against the Board and its Regional Director; claiming that it has been denied procedural due process, plaintiff seeks to enjoin an election among plaintiff's distributors to select a collective bargaining representative. Because we believe the district court had no jurisdiction over this action, we affirm the dismissal of the complaint.
 
 
 2
 The Herald Company is the publisher of two Syracuse newspapers. These newspapers are delivered to home delivery subscribers, newsstands and street peddlers by over one hundred distributors, who have contracted with Herald to make the deliveries. About June 27, 1966, the Building Service Employees International Union, Local 200, AFL-CIO, filed a petition with the Regional Office of the Board seeking certification as the collective bargaining representative of the distributors. Herald resisted strenuously, claiming that the distributors were not employees but were independent contractors, expressly exempted from the coverage of the National Labor Relations Act, 29 U.S.C. 152(3). Over a year later, after extensive hearings and the submission of briefs, the Regional Director decided that the distributors were employees and directed a representation election. On August 15, 1967, Herald filed a petition for review of the Regional Director's decision, again arguing, inter alia, that the distributors were not employees. This petition was denied by the Board on November 15, 1967.
 
 
 3
 It is upon the events which followed that Herald claims a denial of due process. On November 22, 1967, Herald moved the Board and the Regional Director to reconsider the petition to review, to reopen the record in the representation proceeding, and to stay the election. The asserted ground for the motion was 'additional and newly discovered evidence': Earlier in November, forty-seven of the distributors had given notice to home delivery subscribers that they would be charged for evening and Sunday newspapers ten cents per week more than a new proposed price set by Herald. Herald asserted that this action was most significant in determining whether the distributors were independent contractors or employees. The motion for reconsideration also stated that Herald had already begun an action against the forty-seven distributors in New York Supreme Court to enjoin them from charging more than the newspaper price established by Herald. As part of its motion papers, Herald submitted its complaint and other supporting papers in the state action; it also asked the Board and the Regional Director to defer action on the motion and stay proceedings until the defendants in the state action filed their answers. On November 28, the union submitted to the Board a reply in letter form, pointing out that the representation hearing had been conducted on twenty-five separate days, resulting in over 2,800 pages of record and approximately 200 exhibits. The reply asserted that plaintiff had illegally refused to bargain with the distributors for seventeen months, that Herald had unilaterally determined to increase its newspaper price to customers, that this would have a substantial effect on the earnings and conditions of employment of the distributors, that plaintiff attempted to force each one individually to assume extra duties in order to share in the price increase, that the entire mater was a labor dispute, and that Herald's motion was a device to delay an election.
 
 
 4
 On December 4, the Board sent a telegram to Herald denying its motion to reconsider 'as lacking in merit.' The following day, the Regional Director notified Herald by telegram that he denied its motion to reopen the representation proceeding. Thereafter, Herald submitted to the Board and the Regional Director copies of the answering affidavit of the distributors in the state action, in which the distributors did not deny that they had attempted to raise the prices charged to subscribers above those set by Herald. However, the distributors' affidavit repeated the allegations about the controversy previously made to the Board, ending with the assertion that the entire matter was a labor dispute within the exclusive purview of the Board.
 
 
 5
 On December 11, 1967, Herald commenced this action in the United States District Court. The complaint alleged that the Board's refusal 'to give due consideration to plaintiff's motion * * * in light of the new evidence' was arbitrary, capricious, and a deprivation of due process. Accordingly, Herald sought to compel the Board and the Regional Director to receive the evidence and reconsider their decisions before any election. Following a hearing on December 21, 1967, Judge Brennan ordered the complaint dismissed and denied the injunction. This appeal followed on an expedited basis. Meanwhile, the election was held, resulting in 2-1 approval of the union as the distributors' bargaining agent.[1]
 
 
 6
 Plaintiff itself recognizes that an action to review a representation proceeding is not usually cognizable by the district court. Certification by the Board is not an 'order' subject to judicial review, AFL v. NLRB, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). Normally, review of certification proceedings must await a final order by the Board in an unfair labor practice proceeding under sections 10(e), (f) of the National Labor Relations Act, as amended, 29 U.S.C. 160(e), (f), upon which the record of the certification proceeding becomes part of the record for review pursuant to section 9(d), 29 U.S.C. 159(d). The requirement that the employer first be found guilty of an unfair labor practice by the Board, usually a refusal to bargain under section 8(a)(5), 29 U.S.C. 158(a)(5), before he can obtain review by a court of appeals of the alleged errors in the certification proceeding may be burdensome to the employer. However, allowing immediate review of certifications under an earlier statute had 'brought collective bargaining to a standstill.' See Jaffe, Judicial Control of Administrative Action 357 (1965). Therefore, this delayed review procedure is clearly the result intended by Congress. See Goldberg, District Court Review of NLRB Representation Proceedings, 42 Ind.L.J. 453, 460-65 (1967).
 
 
 7
 However, the courts have established certain very limited exceptions to this doctrine. Broadly stated, they are: A district court may intervene when the Board has acted clearly contrary to the statute, Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, 116 U.S. App.D.C. 243, 322 F.2d 993 (D.C.Cir. 1963); when there are international ramifications to the Board's error, McCulloch v. Sociedad Nacional de Marineros, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); and when there is an assertion of a violation of constitutional rights which is 'not transparently frivolous,' Fay v. Douds, 172 F.2d 720 (2d Cir. 1949). Plaintiff relies on this last exception to the general rule; it asserts denial of due process in the Board's failure to consider the evidence concerning the institution of the price rise by the distributors and to defer action until all the facts could be developed. It may be conceded that the Board's telegram that Herald's motion was denied 'as lacking in merit' was cryptic. One cannot tell whether denial was based on procedural or substantive grounds; i.e., whether the Board viewed the proffered evidence as not 'newly discovered' or as unlikely to lead to a different result. But in either event, we regard the constitutional argument as insubstantial.
 
 
 8
 If the Board rejected the evidence on procedural grounds, it was certainly entitled to do so. It is undisputed in the record that Herald knew on November 3, 1967, if not earlier, about the proposed action of the distributors, which was to occur on November 6. At that time, the Board had not yet ruled on Herald's petition to review the Regional Director's decision, and did not announce its decision until twelve days later, on November 15. However, Herald did not bring the evidence to the Board's attention until seven days after the Board had ruled, and then it did so on the theory that the evidence was 'additional and newly discovered.' The union's reply to Herald's motion to reconsider pointed to the length of the proceedings and accused Herald of stalling tactics. Whether the Board's denial of the motion was 'peremptory,' as the district judge thought, or whether the Board exercised wise judgment, is not the issue. The question is whether the Board's action was so arbitrary and capricious as to afford a not insubstantial calim of unconstitutionality. All proceedings, whether before an administrative agency or a court, must come to an end sometime, and the agency or the court must have the right to decide when. Whether, in doing so, it errs is an issue that may be tested in the normal course of review, cf. Chicago Automobile Trade Ass'n v. Madden, 328 F.2d 766, 768-769 (7th Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); McLeod v. Local 476, United Bhd. of Industrial Workers, 288 F.2d 198 (2d Cir. 1961), but to equate such error with deprivation of a constitutional right is ordinarily unwarranted. We do not say that denial of a motion to reopen a proceeding could never be so arbitrary as to be unconstitutional. We say only that on a record of a long, fiercely contested litigation, Herald's delay in moving despite its earlier knowledge until after the Board had ruled, its request for a stay pending further steps in the state court action, and the union's charge that the motion was a dilatory tactic, the Board's refusal to consider the evidence could hardly be called capricious. On this theory, the claim that the Board's action was unconstitutional was 'so clearly incorrect as to be frivolous.' See Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129, 134 (2d Cir. 1967).
 
 
 9
 Our conclusion would remain unchanged even if the Board's action is viewed as a judgment on the significance of the evidence. On that theory, despite Herald's protestations to the contrary, it would be attempting to obtain district court review of a ruling on evidence at a representation proceeding. The case is clarified if we assume that Herald had offered the evidence to the Regional Director before he made his decision, and he had rejected it. We know of no authority that would allow Herald to obtain immediate district court review of such a ruling; the cases indicate the contrary. Cf. Texaco, Inc. v. FPC, 117 U.S.App.D.C. 268, 329 F.2d 223, cert. denied, 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963); Texaco, Inc. v. FTC, 301 F.2d 662 (5th Cir.), cert. denied, 371 U.S. 822, 83 S.Ct. 40, 9 L.Ed.2d 62 (1962). On this issue, the fact that Herald's offer of the evidence came at a later stage of the proceeding obviously cannot make its legal position stronger.
 
 
 10
 It is true that if the Board's action was not based on procedural grounds, but on an assessment of the evidence, its decision is less justifiable, since the evidence seems significant. However, the Board argues to us alternatively that the evidence can be viewed as irrelevant, as not sufficient to require a different result, or even as harmful to Herald. Thus, the Board points out that the fact that the distributors may think that they have the right to control the newspaper price is irrelevant to the issue of who has actual control. The Board also argues that in view of all the other evidence in the lengthy record, the Board could still properly adhere to its finding that the distributors were employees, even if the evidence of the distributors' action were taken into account. Cf. NLRB v. United Ins. Co. of America, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). Finally, the Board claims that since Herald in the state court action denies that the distributors have a right to control the price of newspapers, the proffered evidence actually tends to confirm the Board's view that the distributors were employees. We state these arguments in such detail not to indicate agreement with them but to point up the obvious-- the ruling on evidence, if that is what it was, might have been incorrect, but it was hardly so whimsical as to rise to constitutional dimensions.
 
 
 11
 On this theory, Herald clearly must be given an adequate opportunity to test the ruling at some time, NLRB v. Ideal Laundry & Dry Cleaning Co., 330 F.2d 712, 715 (10th Cir. 1964), but that time need not be now. In this context, it does not matter at what point in the proceeding the relevant facts are considered, so long as they are considered at some point before the final order becomes effective. Inland Empire Dist. Council, etc. v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945); Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129, 134 (2d Cir. 1967).[2] Herald will have its chance to attack the ruling in the normal course of events; there will be no enforcement of a final order until review by a court of appeals of a Board finding of an unfair labor practice.[3] If the Board has reconsidered the evidence on its merits, and rejected the claim after reconsideration, Herald may argue this alleged error to the court of appeals at that time. Consolidated Edison Co. of New York v. McLeod, 202 F.Supp. 351 (S.D.N.Y.), aff'd, 302 F.2d 354 (2d Cir. 1962). If the Board has refused to look at this evidence, Herald can introduce it at the subsequent unfair labor practice proceeding. Utica Mutual Ins. Co. v. Vincent, supra, 375 F.2d at 134; NLRB v. Dewey Portland Cement Co., 336 F.2d 117 (10th Cir. 1964); NLRB v. Ideal Laundry & Dry Cleaning Co., supra, 330 F.2d at 716. Finally, if the Board has improperly rejected the evidence, or refuses to consider it at any time, it will still be part of the record before the court of appeals, provided that Herald properly preserves it, and the court may refuse to enforce a bargaining order until the Board has considered it. See NLRB v. Dewey Portland Cement Co., supra; NLRB v. Ideal Laundry & Dry Cleaning Co., supra.[4] In sum, even if the Board's action is construed as a ruling on the significance of the evidence, the contention that the ruling was unconstitutional is frivolous.
 
 
 12
 In addition to asserting that there was no unconstitutional action here, the Board also argues that under Fay v. Douds, supra, upon which Herald relies, there must be an assertion of destruction of a property right, as well. As we pointed out in Utica Mutual, supra, 375 F.2d at 134, Herald
 
 
 13
 has no 'property right' in the designation of the unit of its employees with which it may be required to bargain, even though the National Labor Relations Act entitles it to be heard thereon.
 
 
 14
 See also NLRB v. National Mineral Co., 134 F.2d 424, 426-427 (7th Cir.), cert. denied, 320 U.S. 753, 64 S.Ct. 58, 88 L.Ed. 448 (1943); Foreman & Clark, Inc. v. NLRB, 215 F.2d 396, 406-407 (9th Cir.), cert. denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954). Herald makes the novel assertion that if certification of the union occurs, Herald will be unable to assign work to employees outside the bargaining unit without risking a strike which would otherwise be barred by section 8(b)(4)(D) of the Act, 29 U.S.C. 158(b)(4)(D).[5] But if that is a sufficient property right to justify injunctive relief, it would similarly have been enough in Utica Mutual; in fact, Herald's point would apply to all certifications. Such a view would seriously undermine the congressional policy 'that in the normal course of events Board orders in certification proceedings under 9(c) are not directly reviewable in the courts.' Boire v. Greyhound Corp., 376 U.S. 473, 476, 84 S.Ct. 894, 896, 11 L.Ed.2d 849 (1964). However, since we regard the claim of unconstitutional action as frivolous, it is not necessary to decide whether Herald's theory of a property right is justified. Similarly, we need not decide whether Fay v. Douds, supra, is 'still authoritative.' Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129, 134 (2d Cir. 1967); see Greensboro Hosiery Mills, Inc. v. Johnston, 377 F.2d 28, 32 (4th Cir. 1967); Boire v. Miami Herald Publishing Co., 343 F.2d 17, 21 n. 7 (5th Cir.), cert. denied, 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70 (1965); Lawrence Typographical Union v. McCulloch, 121 U.S.App.D.C. 269, 349 F.2d 704, 709 n. 1 (1965) (concurring opinion of Wright, J.).
 
 
 15
 The order of the district court is affirmed.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Counsel for the Board apparently stated to this court, when the expedited schedule was fixed, that even if the certification should issue, we would have the power to grant appropriate relief, if warranted
 
 
 [2]
 Plaintiff's reliance on Leedom v. Kyne, supra, for the proposition that we must intervene now is without merit
 
 
 [3]
 It is conceivable that no unfair labor practice charge will issue if Herald refuses to bargain with the union, leaving Herald without a statutory method of review. Although that state of affairs may be considered too remote to require discussion, see Goldberg, supra at 457 n. 3, 493, we note only that nothing in this record suggests that it is more than barely possible
 
 
 [4]
 Section 102.67(f) of the Board's Rules and Regulations provides:
 Denial of a request for review shall constitute an affirmance of the regional director's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding.
 However, counsel for the Board at oral argument here and in the court below conceded that Herald would be able to relitigate its contentions on the basis of newly discovered or available evidence at an unfair labor practice proceeding, and that even if the trial examiner refused to allow relitigation, Herald could make an offer of proof and thereby preserve its record for review by this court.
 
 
 [5]
 That section provides:
 (b) It shall be an unfair labor practice for a labor organization or its agents--
 (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--
 (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work * * *.